Can you hear me? I can, Your Honor. And Mr. Cherry, are you there? Can you hear me? Yes, Your Honor. Okay, great. Well, I'm here, and also on the phone with me are Judges Keith and Griffin. And this will be a normal argument, except that you won't be able to see us, but we are here, and we may have questions, and we'll try to identify ourselves when we ask a question. So, unless you have any questions, you can proceed, Mr. Gant. May it please the Court, Counsel. What Your Honors have for you here today is a classic case of a Blakely v. Washington violation. A Rutherford County jury convicted Mr. Fults of 5 counts of rape, 12 counts of sexual battery by an authority figure, and 7 counts of statutory rape. And as pertinent to this proceeding, under Tennessee law at the time, a Range 1 offender like Mr. Fults, his sentencing range was 8 to 12 years on the rape conviction. A sentence at the low end of the range was the presumptive sentence for each, pardon me, for the rape conviction, if there are no enhancements or mitigating factors. With respect to the 5 counts of rape, however, the Court enhanced Mr. Fults' sentence to 9 years, that is, 1 year above the presumptive low end of the range on each count. Mr. Gant, if I could break in, this is Judge Rogers. I think we're familiar with the alleged Blakely violation. The two concerns that I have, I can't speak for my colleagues, have to do with procedural default and harmless error. I wonder if you could address those. Yes, Your Honor. I will address procedural default issue first. There is no procedural default in this case. And I say that because the issue concerning the judge-found imposition of facts that resulted in the sentence, that issue was first raised in the post-conviction petition by Mr. Fults. The state alleged in opposition to that had been defaulted because it had not been raised in the direct appeal. My understanding and my belief is this. I agree that it was not raised in the direct appeal, but it was, in fact, raised in post-conviction. And during the post-conviction, there was no issue and the court never determined that the issue of judge-found facts had been procedurally defaulted. Well, this was raised, this is Judge Rogers again, this was raised in the collateral proceedings on appeal. That is, the appeal from the collateral proceeding. Yes, sir. Wasn't it? It was. So the argument is whether the Court of Appeals, on the state Court of Appeals at the collateral appeal stage, addressed this issue. And I'm wondering whether the first paragraph of its analysis isn't sufficient to say that it addressed the issue. It says, it's brief, I agree, but it says the state contends that the issues were either previously decided on direct appeal or were waived by the petitioner's failure to raise the issues on appeal. And we agree. But if the state made an argument and the Tennessee Court of Appeals agreed with it, why isn't that enough to say that that constitutes a determination that the issue was defaulted? It was not defaulted because the Tennessee Court of Criminal Appeals only addressed one half of the Blakely argument. And that argument had to do with the consecutive sentences that were imposed. Well, sir, I understand that, but my question is, the other one was raised, correct? The consecutive sentences, your honor? No, the other one. The one you're raising now was raised in the brief to the Court of Appeals on collateral review. It was. And there is a sentence saying all of these issues were either waived or previously decided. It doesn't say any more, but it does say that. Why isn't that sufficient? That's my question. We're agreeing on the procedural facts here. I'm just asking you the legal effect of them. Well, what I recall, Judge Rogers, is that the beginning of the analysis by the Tennessee Court of Criminal Appeals on post-conviction review, it was the petitioner argues that he was sentenced improperly when the trial court imposed consecutive sentences for his Class B felony convictions. And what I'm suggesting to your honor is that the analysis addressed only a portion of that claim. But I'm agreeing with that. All of the analysis except this one first paragraph deals with something else. But you still have to deal with the first paragraph, which says that the state contends that the issues were previously decided on direct appeal or were waived. We agree. Now, it doesn't go on to elaborate. I agree with that. It doesn't. But why aren't those words enough? Judge Rogers, to be quite honest with you, I'm saying it's not enough simply because in just saying that, that is, previously decided on direct appeal suggests that the issue was addressed. But then it says or were waived. Or waived. That's true, your honor. That's true. But if it was the position of the state that in fact the issue, that is, the issue concerning the judge finding of facts, was in fact waived, that's an argument they could have made and they haven't made it. They did make it on collateral appeal though, right? Well, that's what you said earlier. Let me slow up here if I may, your honor. What I'm saying is this. That limited language in the court's analysis where it does in fact say, either previously decided on direct appeal or were waived by petitioner's failure to raise the issue, I concede that that would suggest that maybe both issues, both parts of that issue were in fact addressed. I will concede it's possible to read it that way. But let's assume that that's true, just for the sake of the argument. Right. Just because there has been a procedural default doesn't foreclose this court from reviewing this issue. Why not? Because as I understand the rules of procedural default, there has to be a rule in place that according to, let's see, has to be a rule in place that rule has to have been in effect not complied with the court reviewing the claim must have enforced that particular rule. So you're just saying this is insufficient indication that it was enforcing the rule? Yes, sir. Okay. Well, assume you, unless my colleagues have further questions on procedural default, perhaps you could address the argument that was not a procedural default argument that was relied upon by the district court below. Harmless error. It was harmless. No prejudice. Yes, sir. In the district court, in its ruling that constituted harmless error, there were no factual findings upon which the district court made that determination. And in the absence of factual findings in support, and in support specifically of the enhancements that were relied upon by the post-conviction court, I suggest, Your Honor, in the absence of that, then the ruling of the district court was, in effect, insufficient. Well, this is Judge Rogers again. I don't have the opinion right in front of me, but didn't the district court go through each of the four enhancements  the same thing? Is Your Honor referring to the district court or the post-conviction court? I'm talking about the district court below here, the federal district court. Judge Rogers, you could be right. For some reason, I believe that that was, in fact, done at the post-conviction court, but it may have been done in the district court, and I'm sorry. My question is, apart from what happened below, why isn't it true that any Blakely error that there was, assuming it was not procedurally defaulted and is before us, making that assumption, why is it not non-prejudicial? Because the facts that under Blakely should have gone to the jury, the jury would doubtless have found, and so the error is not prejudicial. That's the argument that I understood the federal district court to have made in coming to the ruling that the court did. And one of those facts had to do with abuse of authority, one with sexual gratification, one with victim vulnerability, and one with whether they were on school property. Those are the facts that didn't go to a jury, thus leading to the Blakely violation that you're talking about. Isn't that correct? That is correct, Your Honor. Why isn't it true, as I believe the district court ruled, the federal district court ruled, that if it had gone to the jury, they certainly would have found those facts, and so therefore there's no Blakely prejudice, I guess you would say. That seems to have been the argument of the district court below, wasn't it? It was, Your Honor. What's wrong with that argument is my question. Thank you, Your Honor. I'll try and address that. And may I do that by way of an example? One of the enhancements that the district court relied upon in arriving at its determination it was harmless error was the vulnerability of the victim. There was evidence in the record to suggest that you had two victims here, that is, one individual and a portrayal of two different people. That is, this victim, one is a 15 or 16-year-old who had ADHD, he had financial problems and some behavioral problems. But there was also evidence that he was a mature 15-year-old homosexual who was manipulative and used to being, when I say, you know, was much, much more mature than he was made out to be. I'm suggesting to Your Honor that had that information, that is, the more mature manipulative individual been put before a jury, that jury may have decided that this idea of him being vulnerable was not enough. And I suggest to you with regard to the other three enhancements, the same thing is true, and I'm told that my time is up. Your time is up. Thank you. You'll still have your time for rebuttal. Thank you, Your Honor. Any other questions of Mr. Gant before we go to the other counsel? Not for me. This is Judge Keith. I don't have any questions. Thank you. All right. Mr. Gant, this is Judge Griffin. Judge Griffin, how are you? Good. The harmless error standard we're talking about is the harmless error standard for habeas cases, which is not the normal harmless error on direct review, but rather whether you have sustained your burden of showing that the error had a substantial and injurious effect on the outcome of the case. Now, your argument was, well, it may have affected something that the jury decided, but I don't think that that sustains your burden, does it? I mean, don't you have to convince us that it actually would have had a substantial and injurious effect? And if that is the standard, how have you done that? Well, may I try and answer that, Judge Griffin? Yes, please. Because it's a higher standard than we're used to on direct appeal because this is a habeas case. I mean, you agree with that. It's a higher threshold. Yes, sir. I do. But I am suggesting to you most respectfully that AEDPA doesn't apply to this case, and it doesn't apply to this case because there was no procedural default here, and because there was no procedural default and this issue was not addressed in the state court, there was no adjudication in the state court on this particular issue, AEDPA 2244-D1 doesn't apply. Therefore, the higher burden, that is, the higher proof that Your Honor just spoke about, doesn't apply here. Okay. AEDPA doesn't apply because there wasn't a ruling. I guess AEDPA does apply. You're saying the harmless error doesn't apply because there had to be a ruling here  What I'm saying, Your Honor, I'm not quite sure I'm following. All right. It's coming out of my mouth and it's coming out of my head, Judge. Because there was no state court ruling on the merits of this second part of the Blakely claim, 2244-D1 does not apply. Okay, but we're not applying that, are we? We're applying the harmless error standard of habeas, which is separate, isn't it, from the statutory provision you've cited? It is, Your Honor, and forgive me, I misunderstood your question. Okay. All right. I guess to answer your question, you think it does satisfy the higher habeas, harmless error standard. Okay. All right. Thank you. You're welcome, Your Honor. Thank you, Counsel. We'll now hear from Mr. Cherry. Yes. May it please the Court. Brent Cherry for the respondent. Eric Quarles. Rather than beat around the bush at all with the Court, I'd like to jump right into the issues at hand, which can be boiled down into a fairly succinct paragraph. Mr. Fultz did not challenge the trial court's enhancement of his rape sentences at sentencing or on direct appeal, and it was not until he filed his petition for post-conviction relief that he raised the issue. And the post-conviction court denied relief without specifically addressing the Blakely claim, and Mr. Fultz raised the issue on post-conviction appeal. But at that point, the State argued that the issue was waived because it had not been properly raised at trial or on direct appeal, and the Tennessee Court of Criminal Appeals agreed. Now, in my brief, I pointed out— Well, now, Counsel, this is Judge Rogers. When you say that they agreed, that's all based on the one sentence that I was talking about earlier. Is that correct? That's right, Your Honor, yes. There's nowhere else. So your whole procedural default argument stands or falls based on that one sentence, which is the second sentence of the analysis. Is that correct? That's right. Yes, Your Honor. It could certainly be read differently. It could be read that way, but it could also be read that the waiver that they're talking about has to do with the other issue that was waived that they refer to later in the opinion. I mean, normally, having written a few opinions in my time, when you have an introductory paragraph which lays things out, it refers to the things that are about to follow. So we would have to do some reading in to lead to that conclusion, wouldn't we? Well, Your Honor, you know, I really wish that the Court of Criminal Appeals had been a little more explorative of these issues. It would make my life a lot easier. But when you look at the plain language that they use, and, again, when we go back and look at the arguments raised by both the petitioner, post-conviction, I mean, that was a very brief argument that was made there about the application of Blakely. The response was a little more expansive. But when we look at the specific language that the Court of Criminal Appeals uses, what you're suggesting is that a brief response in the Court of Appeals may have resulted from very brief briefing to it. I think that has something to do with it, yes, Your Honor. But when we look, again, at the specific language that the Court used, this is the line that we can all focus on. The state contends that the issues, multiple issues, were either previously decided on direct appeal or were waived. And that suggests two separate issues, two separate applications, either decided on direct appeal or were waived by the petitioner's failure to raise the issues on appeal. Now, that last part can be considered as a sentence that goes together. Were waived by the petitioner's failure to raise the issues on appeal. So we've got two separate points that the Court's talking about by their use of multiple types of language. I wish they had gone a bit further than just to say, we agree. But I would contend, I do contend, that that is sufficient to apply the procedural default in this case. Okay, but isn't, though, as Judge Griffin, isn't the law that the procedural bar must be clearly and expressly invoked by the state court? And, I mean, that's really the standard that we've applied before. It's got to be clear and express. Here, it's just a conclusion that it was waived and there's no reference to the code provision which requires it to be raised earlier or, you know, where this comes from other than the conclusion. So, I mean, how is this clearly and expressly invoking the procedural tenancy bar? Your Honor, I think we have to go back and look at the argument to understand what the Court was agreeing to. And the language that was used in the state's appeal was, therefore, pursuant to Tenancy Code Annotator 4030106G, and that's the provision that specifies that a defendant must bring his issues on direct appeal if they're available to him, which did not happen. Sure, but that wasn't cited in what was quoted here, was it? Well, Your Honor, it was cited by the state in their argument and then adopted by the We Agree. And, obviously, it would have been better if the Court had said, you know, had cited to the statute provision also. But, again, based on what they're agreeing to and the specific language that was used by the state, I think We Agree is sufficient. I think that all goes together. Okay. Mr. Cherry, this is Judge Rogers again. Could you address the reasoning of the District Court and particularly the part that your opposing counsel criticized, and that was the idea that the vulnerability of the victim was not something that we can be sure the jury would have resolved the same way that the District Court did? Yes, Your Honor, I'd be happy to address that. I'd like to take that from a little bit more than just what was addressed by Petitioner's counsel regarding the analysis by Judge Haines. He did go through and look at each of those four enhancement factors for application in this case. And based on what he viewed from the transcript and from the court record before him, he found that there was plenty to support those enhancement factors and that a jury would arrive at that conclusion. But he also noted... That has to be true for all four of them, doesn't it, in order for us to affirm? Well, no, it doesn't, Your Honor, and this is why. Because when we're looking at enhancement of a sentence, only one factor is required. The finding of only one factor is necessary for enhancement. Now, there were four that were found here, but it's not necessary for all four to be found to warrant the enhancement of the sentence. Now, in this case, the trial court, acting as the judge acting alone, found those four enhancement factors. And the question that we have to deal with is, what if a jury had been able to consider these? Well, the fact is that the jury did consider at least two of these in arriving at their judgment. Now, to understand that a little bit better, if we go back and look at exactly what Mr. Fulce was charged with, he was charged with five counts of rape, 12 counts of sexual battery by authority figure, and seven counts of statutory rape. And these were all based on 12 specific events that were elected by the state before this went to the jury. So five of those events were treated by the rape count, seven of them were treated by the statutory rape count, and all 12 were covered by the sexual battery count. When this came to the Court of Criminal Appeals, the Court of Criminal Appeals looked at all these convictions from a double jeopardy point of view and determined that the sexual, or rather the statutory rape conviction should be merged into the seven corresponding convictions of sexual battery by an authority figure, that three of the sexual battery convictions should be merged into rape convictions, and they also found that the other two sexual battery convictions, that there was sufficient evidence to support those standing alone apart from the touching that took place as a consequence of the rape. So we're talking about 12 events. In all of those events, the jury returns findings in guilty for sexual battery by an authority figure. And when you look at the elements of sexual battery by an authority figure, and this goes to Tennessee Code Annotated 39-13-527, sexual battery by an authority figure is, first of all, unlawful sexual contact. That's one of the elements of the offense. And when we look again at the definitions under Tennessee Code, sexual contact is, it includes, and I'm reading directly from the statute, it includes intentional touching of the victims, the defendants, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victims, defendants, or any other person's intimate parts. And here's the important language. If that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification. So that is a necessary element of sexual contact that has to be found to support that conviction for sexual battery by an authority figure. An additional element of sexual battery by an authority figure is that the defendant, and I'm reading directly from the statute, the defendant was at the time of the offense in a position of trust or had supervisory or disciplinary power over the victim by virtue of the defendant's legal, professional, or occupational status, and used the position of trust or power to accomplish the sexual contact, or the defendant had at the time of the offense parental or custodial authority over the victim and used the authority to accomplish the sexual contact. So in those two elements, in that the jury found the defendant guilty of sexual battery by an authority figure, including those two elements, those two elements for purposes of enhancement of the sentence were found by a jury and satisfied Blakely. Well, counsel, that's pretty persuasive, but it doesn't address the other two elements. And again, Your Honor, well, when we talk about the other two elements, we can go back to the analysis that was applied by Judge Haynes, in that the evidence was very clear, it was laid before the court, and a strong argument can be made that the jury would undoubtedly have found those other two elements. But again, I'll return to my prior argument. When we talk about enhancement factors under Tennessee law, only one enhancement factor is required for enhancement of a sentence, and we have many cases... Pardon me, didn't the state court rely on all four of these factors? Sure, they could have relied on two, but the judge, in fact, relied on all four. So if there's a Blakely error as to one or two of them, I don't see why that wouldn't mean that under Brecht, it meets the standard for saying that there was prejudice here. Your Honor, what would happen, and we've got some cases like this in our Tennessee case history, where the courts have reviewed the findings of enhancement factors, and when they kick one out, if there's another factor, for example, prior convictions, a history of prior criminal conduct, which does not require a Blakely finding, even though other factors may fall away because of Blakely, that other factor remains and justifies the trial court in their sentencing. Mr. Cherry, does each factor enhance the sentence one year? No, Your Honor. That's not the way it works. How does it work? The way this would work is that once the court has determined that enhancement factors or an enhancement factor is applicable, then the offense or offenses may be enhanced by, well, up to the maximum sentence. In this case, we had five rape convictions, five sentences. The minimum sentence for each of those was eight years. In each sentence, the trial court enhanced them by one year. And so due to the consecutive nature of those sentences, the total amount of enhancement became five years, but it was one year for each of those offenses. We really don't know what the state trial court would do if only three of the enhancements were found supported by the evidence as opposed to four, do we? I mean, we don't know that the overall enhancement would still be one year if only three or two were found. It could have been that way, but we don't necessarily know that the sentence would come down that way, do we? Your Honor, I suppose that we don't. But here's the other thing to remember is that the trial court held the authority to sentence the defendant in the end. The role of the jury would have been to consider these different factors and to make findings. The trial court had the entire case that he would have viewed, all the witnesses that he would have watched and heard. I think we're kind of getting on a tangent here because you said, well, they didn't have to find all four, but they did. And if one or two are kicked out, we don't exactly know what the sentence would be. My question is, really, is there a reasonable argument as to any of these factors? We've talked about gratification, and we've talked about abusive position of trust, and your argument is that it's implicit in the jury's finding that they found those. The vulnerability of the victim because of age or physical disability or mental disability, I mean, there is no question that the victim had ADHD, is there? I mean, I think the defendant admitted that he knew that, right?  And, of course, the defendant didn't testify, but there was evidence that he had actually written a letter to a counselor suggesting that the child had ADHD and he needed help and special attention. That's in the evidence, right? Yes, there are. That can be considered sentencing. So I don't think there's any question that the victim has a mental disability of ADHD and has committed it on school property. Again, although the defendant didn't testify, I don't think there's any dispute, at least that several of these offenses occurred on school property, right? That's right. It really is not in dispute at all. So I think, well, the way I see it, I don't see there's a reasonable argument as to any of these four. Right. I think your best argument is that really the petitioner has not sustained his burden of showing that the error had a substantial and injurious effect on the outcome, which is what their burden is here. Exactly. Yes, you are. Okay. My question is why are you reluctant to argue that? Oh, your Honor, I'm not reluctant to argue that. I don't think they've met their burden, but I just thought it was a very strong argument to point out that the jury has already found a couple of these factors as part of their judgment. Okay. Well, thank you. I'm not giving up the argument. Okay. Thank you. Your time is up. Unless my colleagues have further questions? I have none. Judge Griffin? No, I don't have any. Judge Keith? Thank you. Thank you, Judge Keith. We'll now hear rebuttal from Mr. Gamp. Three minutes. Thank you, Your Honor. I would like to go back to address an issue raised by Judge Griffin a few moments ago, and that's the issue of whether or not there was, in fact, a procedural default, and if there wasn't, what are the consequences of it? And as Judge Griffin pointed out, in order for there to be a procedural default that precludes the petitioner from raising an issue, it has to be precluded by petitioner's failure to state a procedural rule. Only if there is a procedural rule to the petitioner's claim, the petitioner failed to comply with the rule, and the state courts actually enforced procedural sanction. In that one line, pardon me, I don't want to say one-liner, but in that brief analysis, opening paragraph, petitioner alleges that he was sentenced improperly when the trial court imposed consecutive sentences, plural, for his Class B felony convictions. I suggest to you when it says sentences, plural, for Class B convictions, there were a series of convictions. There was the convictions for statutory rape. There was a conviction for rape by an authority figure. So the use of the plural consecutive sentences at issues suggests to me that they were talking about not just rape cases. Counsel, this is Judge Rogers. I think some of the focus of the argument that we just exchanged with your opposing counsel focused on whether there was prejudice, and your opposing counsel argues that if there's a Blakely problem with a couple of these but not a Blakely problem with a couple of the others, then there's no problem. Is that right? I disagree with that, and I believe by a… Well, can you support your disagreement? I believe in my brief I cited L-O-V-N-I-S Lebonis in support of the proposition that if one or two of these enhancements are found to be inappropriately employed, that means that you go back and you look at the sentence that was imposed, and you've got to look at the entire sentence and look that way, those enhancements versus the mitigation, and determine whether or not, by looking at all circumstances, whether or not the judge would have imposed a different sentence. And I believe it was your Honor, Judge Rogers, who said we really don't know what the trial judge would have done if, in fact, one or two of these enhancements didn't apply. And I think it's important to note that he imposed one year, one additional year, as the sanction for, let me back up, in each one of the rape cases, convictions. What do you do, I understand that, counsel, and we'll take a look at Lovins. What do you do, you only have a little time left, what do you do with the questions that Judge Griffin had about the vulnerability of the victim? You seem to focus on the vulnerability of the victim as the least clear with respect to whether there was prejudice. And he points out that there was ADHD, and he was younger, and although Judge Griffin didn't say this, I would add that you can be vulnerable and still be homosexual, and you can be vulnerable and still be, I don't know, some of the other things that you were relying on, but still be vulnerable because of your age and your mental situation. Why not? Judge, as I recall, the Tennessee statute said particularly vulnerable. And when you talk about particularly vulnerable, they're talking about an individual who as a result of their vulnerability is incapable of summoning help, incapable of calling law enforcement. There was no evidence in the record that anything like that existed with regard to this victim. So that's one of the reasons that I'm saying, Judge, that... things that he might not have wanted to do if he wasn't pressured, why wouldn't that be a vulnerable victim? I answer that, Judge, by simply saying the Tennessee statute required that the victim be particularly vulnerable. And in describing what would be a particularly vulnerable individual, it talked about the inability to summon his help. It talked about... Counsel, this is Judge Keith. What is our standard of review? This is a habeas matter before our court today. What is our standard of review in this habeas matter? Your Honor, I say it's de novo. Your Honor, I would agree that as far as the procedural default is concerned, even though the state court did rule and the district court did not, so as far as the district court's ruling, having not addressed procedural default, I think it would have to be de novo on that issue. Okay, then... Well, I'm sorry, Judge Rogers. Well, go ahead. But this is a habeas matter, and the Supreme Court has not made it difficult, but has set up certain factors that must be complied with, and I just wondered if, in this matter, they have been complied with in light of the Supreme Court's decision now on these habeas cases. Counsel? On behalf of Mr. Foltz, I say they have been met, Your Honor. As far as the procedural default, Your Honor, I think this court's finding of procedural default is warranted, and as far as the habeas is concerned, the district court came to an appropriate ruling in the end, although their path in getting there was something that the state would not entirely agree with. And that's Mr. Cherry, who's just been speaking. Yes, Your Honor. Okay. Do you have further questions, Judge Keith? No, no questions from Judge Keith. Okay. I have no further questions from Judge Griffith. Okay, well, the case will be submitted. We appreciate your doing this in this telephonic way, and we will now adjourn the court, as it were, and retreat into our conference, into our virtual conference room.